UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **IRITA BUTLER,** | * |
| **Plaintiff,** | * |
|  | *  Case No. 1:22-cv-00213-JRR |
| v. | * |
| **PORTFOLIO RECOVERY ASSOCIATES, LLC,** | * |
|  | * |
| **Defendant.** |  |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This matter comes before the court on the parties' cross-motions for summary judgment at ECF Nos. 24 and 25. The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, Plaintiff's Motion will be denied and Defendant's Motion will be granted.

## **BACKGROUND**

This action arises out of a debt collection suit initiated by Defendant Portfolio Recovery Associates, LLC's ("PRA") against Plaintiff in Maryland state court. According to Plaintiff, on July 10, 2020, PRA filed a collection action against Plaintiff in the District Court of Maryland for Charles County; PRA attached an exhibit to the complaint titled "Bill of Sale." (ECF No. 2, ¶¶ 12 and 15.) Plaintiff alleges the Bill of Sale made no reference to Plaintiff's debt and that PRA did not possess the documentation required under MD. CODE ANN., CTS. & JUD. PROC. § 5-1203(b) to initiate a debt collection action against Plaintiff. *Id.* ¶¶ 23-29. On December 10, 2021, Plaintiff filed a Complaint in the Circuit Court for Anne Arundel County; PRA removed the case to this court on the basis of federal question jurisdiction under 28 U.S.C. § 1331. (ECF No. 1, ¶ 4.) The

Complaint sets forth three causes of action: Fair Debt Collection Practices Act (the "FDCPA") 15 U.S.C. §§ 1692a, *et seq.* (Count I); Maryland Consumer Debt Collection Act (the "MCDCA"), MD. CODE ANN., COM. LAW §§ 14-201, *et seq.* (Count II); and Maryland Consumer Protection Act (the "MCPA"), MD. CODE ANN., COM. LAW §§ 13-101, *et seq.* (Count III).  (ECF No. 2.)

The parties have engaged in discovery.  Now that discovery has closed, Plaintiff moves for partial summary judgment as to PRA's liability; PRA moves for summary judgment on the Complaint in its entirety.

## UNDISPUTED MATERIAL FACTS

On August 8, 2014, Barclays Bank Delaware, N.A. ("Barclays") issued Plaintiff an American Airlines Mastercard ending in -3003 (the "Account.")  (Barclays Aff., ECF No. 25-4, ¶ 4.)  On September 5, 2017, Plaintiff filed for Chapter 13 petition in the United States Bankruptcy Court for the District of Maryland.  (Bankr. Docket, ECF No. 25-6.)  Plaintiff listed Barclays as a creditor for an unsecured claim in the amount of $15,850.00; she listed the unsecured claim as a "credit card."  (Pl.'s Bankr. Pet., Off'l. Form 106 E/F at 4.2.) On October 6, 2017, Barclays wrote off Butler's Account balance of $17,190.12 as a loss (known as a "charge-off").  (Barclays Aff., ¶ 8.)

On November 14, 2017, Barclays sold and assigned Plaintiff's Account to PRA.  *Id.* at ¶ 9.  The Bill of Sale through which Barclays sold and assigned Plaintiff's Account to PRA states:

> Barclays Bank Delaware ("Seller"), for value received and pursuant to the terms and conditions of the Bankruptcy Forward Flow Purchase Agreement (the "Agreement") dated May 30, 2017 between Seller and Portfolio Recovery Associates, LLC ("Purchaser"), hereby assigns, conveys, grants and delivers to Purchaser, effective as of the Closing Date of November 14, 2017 all rights and interest of Seller in and to those certain evidences of debt ("Accounts") described on computer files furnished by Seller to Purchaser with current balance totaling ████████.

(Bill of Sale, ECF No. 25-9.)

Meryl Dreano — Custodian of Records for PRA — testified that "computer files" refers to the computer file that was forwarded to PRA upon its purchase of a pool of card-holder bankruptcy-related charged-off accounts (the "Sale File"). (Meryl Dreano Dep., 52:20-53:5.) Each sale includes multiple accounts referred to as a "pool of accounts." *Id.* at 58:19-59:2. Each pool of accounts transferred to PRA pursuant to the Agreement has a bill of sale, a term agreement, and an electronic sale file. *Id.* at 59:6-8. Dreano further testified that the Bankruptcy Forward Flow Agreement (the "Agreement") governs PRA's purchase of a "certain number of accounts, over a predetermined period of time, or a fixed period of time for a predetermined price," and that it includes "many pools of accounts." *Id.* at 58:3-59:2. Dreano explained that the Agreement identifies and governs what pools of accounts will be transferred; the Bill of Sale transfers title to the accounts to PRA. *Id.* at 60:6 – 61:6.

On April 9, 2020, PRA filed a collection action against Plaintiff in the District Court of Maryland for Charles County to collect on the Account balance. (ECF No. 24-4.) PRA attached the Bill of Sale and a printed excerpt of the Sale File related to Plaintiff's Account. *Id.* The printed excerpt is not a copy of the Sale File, but rather a "flat text table" extracted from the Sale File. (Dreano Dep. 50:8-16, 70:15-19, 71:5-72:16.)

On September 8, 2015, PRA entered a consent order with the Consumer Financial Protection Bureau. (Consumer Financial Protection Bureau Consent Order, ECF No. 25-5 at 60.) Pursuant to the Consent Order, PRA agreed not to initiate debt collection action against a debtor unless it possessed:

> a. Original Account-Level Documentation reflecting, at a minimum, the Consumer's name, the last four digits of the account number associated with the Debt at the time of Charge-off, the claimed amount excluding any post Charge-off payments (unless the claimed

>amount is higher than the Charge-off Balance or judgement balance, in which case Respondent must possess (i) Original Account-Level Documentation reflecting the Charge-off Balance and (ii) an explanation of how the claimed amount was calculated and why such increase is authorized by the agreement creating the Debt or permitted by law), and, if Respondent is suing under a breach of contract theory, the contractual terms and conditions applicable to the Debt;
>
>b. A chronological listing of the names of all prior owners of the Debt and the date of each transfer of ownership of the Debt, beginning with the name of the Creditor at the time of Charge-off;
>
>c. A certified or other properly authenticated copy of each bill of sale or other document evidencing the transfer of ownership of the Debt at the time of Charge-off to each successive owner, including Respondent. Each of the bills of sale or other documents evidencing the transfer of ownership of the Debt must include a specific reference to the particular Debt being collected upon, which can be done by referencing an exhibit attached to each bill of sale or other document transferring ownership of the Debt that is represented or warranted by a Seller to be a list all Debts acquired in that Portfolio; and
>
>d. Any one of the following:
>>i. A document signed by the Consumer evidencing the opening of the account forming the basis for the Debt; or
>>
>>ii. Original Account-Level Documentation reflecting a purchase, payment, or other actual use of account by the Consumer.

*Id.* ¶ 119.

## LEGAL STANDARDS

**I.    MOTION FOR SUMMARY JUDGMENT**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). This court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, the court considers the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014).

When adverse parties file cross-motions for summary judgment, as is the case here, the court applies the same standard of review to both motions, considering "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond,* 475 F.3d 633, 638 (4th Cir. 2007)). "[B]y the filing of a motion

[for summary judgment,] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (citation omitted); *see also Sherwood v. Washington Post,* 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989) (explaining that "neither party waives the right to a full trial on the merits by filing its own motion."). "However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non-existence of a factual dispute." *Syncrude Canada Ltd. V. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620, 624 (D. Md. 2013).

"When considering cross-motions for summary judgment, each party's motion must be considered separately with the facts construed in the light most favorable to the non-moving party." *Jackson v. Carin,* 2022 U.S. Dist. LEXIS 228624 *20 (D. Md. Dec. 19, 2022) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). The court will first address Plaintiff's Motion, construing the facts in favor of PRA.

**ANALYSIS**

**I.     PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff argues she is entitled to judgment on liability because PRA's Bill of Sale does not satisfy the requirements of Maryland statutory law or the 2017 Consent Order. (ECF No. 24-1 at 9 and 11.) PRA counters that Plaintiff's Motion should be denied because there is no evidence in the record that PRA violated Maryland law or the Consent Order. (ECF No. 25 at 3.)

Under MD. CODE ANN., CTS. & JUD. PROC. § 5-1203(b)(3)(iii)2 (also known as the "Procedural Rule"):

> (3) A debt buyer or a collector on behalf of a debt buyer shall introduce the following evidence in a consumer debt collection action: . . .
>
>> (iii) Documentation indicating that the debt buyer or collector acting on behalf of the debt buyer owns the consumer debt, including: . . .
>>
>>> 2. A certified or other properly authenticated copy of the bill of sale or other document that transferred ownership of the debt to each successive owner, including the debt buyer or collector, with each bill of sale or other document that transferred ownership containing specific reference to the debt.

The 2017 Consent Order provides:

> A certified or other properly authenticated copy of each bill of sale or other document evidencing the transfer of ownership of the Debt at the time of Charge-off to each successive owner, including Respondent. Each of the bills of sale or other documents evidencing the transfer of ownership of the Debt must include a specific reference to the particular Debt being collected upon, which can be done by referencing an exhibit attached to each bill of sale or other document transferring ownership of the Debt that is represented or warranted by a Seller to be a list all Debts acquired in that Portfolio.

(Consent Order, ¶ 119 c.)

Plaintiff argues that PRA does not have the requisite proof of ownership of Plaintiff's debt. Plaintiff begins by asserting that "the statute refers to the evidence of each transfer as singular, rather than as a series or collection of documents." (ECF No. 24-1 at 10.) According to Plaintiff, the General Assembly intended for each to be evidenced by a separate or "singular" document; therefore, according to Plaintiff, "the singular document required by CJP § 5-1203(b)(3)(iii).2 cannot be replaced by multiple documents aggregated to meet the requirement." *Id.*

Plaintiff argues further that the "consistent reference to a single document showing transfer shows that the General Assembly's intent was for a single document showing transfer to be used to satisfy the statute." *Id.* at 13. Plaintiff avers that the Bill of Sale is not a "single document that

meets the requirements of the statute" because it does not contain a specific reference to Plaintiff's debt; rather, it is the "printed representation" from the Sale File that serves as the single document that contains specific reference to Plaintiff's debt. *Id.* Plaintiff asserts there is no language in the Bill of Sale or printed representation that tie the two documents together. *Id.*

PRA counters that the plain language of the statute allows the court to consider the Sale File in determining whether PRA complied with the Procedural Rule. (ECF No. 25 at 5.) PRA further asserts that under Maryland law, "it is settled that where a writing refers to another document, that other document, or so much of it as referred to, is interpreted as part of the writing." Therefore, PRA argues, the Sale File is part of the Bill of Sale. *Id.* at 6-7 (quoting *Pinnacle Grp., LLC v. Kelly,* 235 Md. App. 436, 462 (2018)) (citations omitted).

The question the court must answer is whether the Bill of Sale, which references previously furnished "computer files," satisfies the Procedural Rule and the 2017 Consent Order.

> The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. *See Collins v. State*, 383 Md. 684, 688, 861 A.2d 727, 730 (2004). Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology. *Deville v. State*, 383 Md. 217, 223, 858 A.2d 484, 487 (2004).
>
> In construing the plain language, "[a] court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application." *Price v. State*, 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003); *County Council v. Dutcher*, 365 Md. 399, 416-417, 780 A.2d 1137, 1147 (2001). Statutory text "'should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.'" *Collins*, 383 Md. at 691, 861 A.2d at 732 (quoting *James v. Butler*, 378 Md. 683, 696, 838 A.2d 1180, 1187 (2003)). The plain language of a provision is not interpreted in isolation. Rather, we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given

> effect. *Deville*, 383 Md. at 223, 858 A.2d at 487; *Navarro-Monzo v. Washington Adventist*, 380 Md. 195, 204, 844 A.2d 406, 411 (2004).
>
> If statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written. *Collins*, 383 Md. at 688-89, 861 A.2d at 730. "If there is no ambiguity in that language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends; we do not need to resort to the various, and sometimes inconsistent, external rules of construction, for 'the Legislature is presumed to have meant what it said and said what it meant.'" *Arundel Corp. v. Marie*, 383 Md. 489, 502, 860 A.2d 886, 894 (2004) (quoting *Witte v. Azarian*, 369 Md. 518, 525, 801 A.2d 160, 165 (2002)).

*Kushell v. Dep't of Natural Res.*, 385 Md. 563, 576-77 (2005).

According to Plaintiff, the word "each" in the Procedural Rule lends to the conclusion that the General Assembly intended that a single document evidence transfer of Plaintiff's Account to PRA. (ECF No. 24-1 at 9-10.) Plaintiff's reading of the statute and Consent Order is too narrow and fails to consider neighboring language in the statute and Consent Order.

Although the statute does require "each bill of sale or other document" to contain specific reference to the debt, nothing in the statute suggests that the General Assembly intended for a bill of sale to be the only valid evidence that a debt buyer owns the consumer debt at issue. To the contrary, the subsection of the Procedural Rule that Plaintiff identifies allows: "[d]ocumentation indicating that the debt buyer or collector acting on behalf of the debt buyer, including:" a "chronological listing of the names of all prior owners of the debt . . ." and "[a] certified or other properly authenticated copy of the bill of sale or other document that transferred ownership of the debt." MD. CODE ANN., CTS. & JUD. PROC. § 5-1203(b)(3)(iii)1-2.

According to Black's Law Dictionary, "Document" is singular and means "something tangible on which words, symbols, or marks are recorded. Most traditionally of course, the term embraced any piece of paper with information on it. Today the term also embraces any information

9

stored on a computer, electronic storage device, or any other medium." *Document,* BLACK'S LAW DICTIONARY (10th ed. 2014)(citing FED. R. CIV. P. 34(a)). "Documentation" is plural and means "[o]fficial documents, reports, and the like used to prove that something is true or correct." *Documentation,* BLACK'S LAW DICTIONARY (10th ed. 2014.) The word "including" "'is usually a term of enlargement, and not of limitation.'" *Burgess v. United States,* 553 U.S. 124, 131 n.3 (2008) (quoting 2A Singer § 47:7, p. 305.)

The surrounding, contextual language of the statute militates against concluding that the General Assembly intended to limit the documentation a debt buyer may introduce to establish ownership as Plaintiff argues. Rather, the statutory language read in its entirety indicates that the legislature intended that a debt buyer, at minimum, include the documentation identified in the subsection. Plaintiff's myopic construction is unsupported by the statutory language.

With respect to Plaintiff's argument that the Bill of Sale does not contain a specific reference to Plaintiff's debt, the Bill of Sale references "computer files furnished by Seller to Purchaser with a current balance totaling ▉▉▉▉." (Bill of Sale, ECF No. 25-9.) Further, PRA's custodian of records testified that the computer files referenced in the Bill of Sale is the Sale File that was furnished to PRA in advance of the November 14, 2017, closing date.

> A. It is sent to us electronically and I do not know if it is in a tape, or a diskette, or an actual file, like in an Excel form.
>
> Q. Okay. When is that file provided?
>
> A. It is on or about the closing date, which is -- or the cutoff, excuse me. The cutoff date is usually a few days to a week or two prior to the actual sale date when we close on the purchase of that pool of accounts.
>
> \*\*\*
>
> Q. Okay. Let me see. Looking back to Exhibit 10, the term agreement, this has a cutoff date, November 8, closing date,

10

>November 14th. So does that mean the sale file would have been provided about November 8th?
>
>A. Around that date. Yes.
>
>Q. Maybe a bit before; maybe a bit after, but in any event, before the 14th?
>
>A. Yes.

(Dreano Dep. 62:1-9 and 62:21-63:8.)

Plaintiff is correct that the Bill of Sale does not contain a reference number or expressly mention the Sale File; and the printed excerpt of Plaintiff's account information does not reference the Bill of Sale. That notwithstanding, this is insufficient to demonstrate that the Bill of Sale does not contain a "specific reference" to Plaintiff's debt, thereby proving PRA did not own Plaintiff's consumer debt. The word "specific" means "of, or relating to, or designation of a particular or defined thing" and "reference" means "the act of sending or directing to another for information." *Reference* and *Specific,* BLACK'S LAW DICTIONARY (10th ed. 2014). The Bill of Sale's reference to the computer file is a specific reference. Indeed, the Bill of Sale contains a total dollar amount of the Accounts contained within the computer file. That reference is sufficiently specific to enable someone directed to the computer file to identify specific accounts, including Plaintiff's Account, because balance totals will match. Based on the evidence in the record, at the time it filed suit, PRA did possess the Bill of Sale and the corresponding Sale File, which included information regarding Plaintiff's Account. Finally, Dreano testified that the Bill of Sale executed on November 14, 2017, would not correspond to any sale file other than that containing Plaintiff's Account information:

>Q. Looking just at this bill of sale and just at this printed representation, how would I know the two go together?
>
>MS. BURNETTE: Object to the form. You can answer.

11

> THE WITNESS: I really don't have an answer, other than the fact that on that particular date that the pool of accounts was sold to us, to my knowledge it's the only bankruptcy pool of accounts that we purchased from Barclays Bank on that particular day. So there would only be one sale file associated with the purchase of that pool of accounts.

(Dreano Dep. 56:5-17.)

As discussed, the Procedural Rule requires PRA to introduce evidence including, but not limited to, a bill of sale with a specific reference to the debt. Under the plain meaning of the Procedural Rule language, in the state collection action, PRA was entitled to introduce other documentation or evidence of its ownership. Stated differently, PRA could have introduced evidence by way of affidavit or deposition testimony, email correspondence, or disclosure of the Bankruptcy Forward Flow Purchase Agreement to resolve any challenge Plaintiff raised to PRA's ownership of her consumer debt. *See* MD. CODE ANN., CTS. & JUD. PROC. § 5-1203(b)(3)(iii) ("A debt buyer or a collector on behalf of a debt buyer shall introduce the following evidence in a consumer debt collection action: . . . Documentation indicating that the debt buyer or collector acting on behalf of the debt buyer owns the consumer debt, including: . . .") The Bill of Sale contains specific reference to Plaintiff's debt and is not legally deficient. PRA did not violate the Procedural Rule.

In addition to the Procedural Rule, Plaintiff argues that the Bill of Sale does not satisfy the requirements of the 2017 Consent Order. Plaintiff concedes that the "the [Consent] Order's language is almost verbatim the same as the statutory and Rules language" and that the standard set forth in the Consent Order is "a weaker standard" than that imposed by the statute. (ECF No. 24-1 at 12.) The court agrees. Because the court finds that the Bill of Sale satisfies the Procedural Rule, it naturally follows that the Bill of Sale satisfies the Consent Order.

12

Plaintiff has not established that PRA did not comply with the Procedural Rule or the 2017 Consent Order at the time it filed its collection suit. Plaintiff's remaining argument as to liability hinges on a finding that PRA did not have adequate proof of ownership. Because the court finds to the contrary, Plaintiff's Motion as to liability will be denied.

## II.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PRA offers three "independently dispositive reasons" why it is entitled to summary judgment on Plaintiff's claims. First, PRA argues, that its documentation complied with the Procedural Rule which – if true – is fatal to all of Plaintiff's claims. Second, PRA argues that even if its documentation "fell short, non-compliance with the Procedural [R]ule does not give rise to liability under the FDCPA, MCDCA, or MCPA." Lastly, PRA argues that Plaintiff's FDCPA claim is time-barred and she lacks evidence to establish the elements of her MCDCA and MCPA claims. (ECF No. 29 at 3.) In answer to PRA's summary judgment arguments, Plaintiff reiterates many arguments offered in support of her cross-motion.

The court agrees with PRA's first argument. The court's analysis in resolving Plaintiff's Motion sets forth this court's reasoning in support of its finding that PRA's Bill of Sale satisfies the Procedural Rule. This finding is fatal to Plaintiff's claims, as all are premised on a finding that PRA did not own Plaintiff's consumer debt when it filed the collection action (because the Bill of Sale was deficient). Because the court finds to the contrary, PRA is entitled to judgment on Plaintiff's claims.

## CONCLUSION

For the reasons set forth herein, by accompanying order, Defendant's Motion is granted and Plaintiff's Motion is denied.

/s/
Julie R. Rubin
United States District Judge


Case No. 1:22-cv-00213-JRR
September 25, 2023